May it please the Court, my name is Craig Dorsey. I'm counsel for the Samish Indian Nation. I'd like to reserve about a minute and a half for rebuttal, if I may. There's a few members of the tribe present here in the courtroom today, but the tribe had a conflict. There was a hearing about two hours ago before the House Natural Resources Committee on issues the tribe has with getting land in the Trust. This is the fifth time the Samish tribe has appeared before this Court in the last 30 years. The first was in 1981 in the Ninth Circuit's divided opinion that affirmed Judge Bolt's 1979 decision denying treaty status to the Samish tribe. The majority decision in that case applied the treaty status test for unrecognized tribes to the Samish tribe in that case. The most recent case is the one I call the Samish decision, which was decided in January 2005. That decision, based on the extraordinary circumstances surrounding the Samish tribe's 20-year efforts to achieve federal recognition between 1972 and the end of 1996, the Court ruled that the tribe was entitled under Rule 60b-6 to reopen the judgment entered against it by Judge Bolt in 1979. Now, are you, I think you're referring to, I think, maybe what we call Washington III? Is that the one with the bay of dissent? I'm trying to follow the Court's notation in the Samish decision. Washington I is Judge Bolt's original decision in 1974. Washington II is Judge Bolt's district court opinion against the Samish tribe in 1979. And then the Ninth Circuit in the Samish case referred to the Ninth Circuit's opinion affirming the denial of Samish rights as Washington III in 1980. Which is the one with the bay of dissent? No, that's Washington IV. The one with the Canby dissent. The one with the Canby dissent. The Canby dissent is Washington III. That's correct. Now, it would appear to me that you're arguing, or your brief is arguing, that the Ninth Circuit decisions in Green and the 2005 Washington decision are consistent. I'm struggling with that. Now, I understand why your client would take that position, because it's clearly favorable to your client establishing treaty rights. Yes. But try as I may, I'm having trouble reconciling those. Well, there's a variety of answers to it. One of the answers is that the court in Samish, the 2005 decision with Justice Baya's dissent, was focused on other issues. It was focused on whether the Samish tribe was effectively prevented from proving its tribal status in proper fashion. It was also focused on the representations made by the United States and the other tribes, and implicit in Judge Bolt's decision that Samish was not at this time or presently a treaty tribe, and that if the tribe should obtain recognition in the future, that would merit reexamination of treaty status. However, if you also look at the Green – What I struggle with, though, is we appear to have precedent that says recognition equals treaty rights, but that appears to follow three-judge panel opinions that don't say that and say otherwise, and a three-judge panel cannot overrule a prior three-judge panel. The only way we can do that is if we go en banc. And what the court decided was not that they have treaty rights. In Green 1, it said the question of reallocation of treaty fishing rights will be subject to future litigation in the U.S. v. Washington case. The reallocation of treaty rights is different than treaty status itself. The Samish tribe in its recognition proceeding did not obtain recognition by showing, for example, their historical fishing sites or village sites or anything that's associated with treaty rights. So the reallocation, the practical impact of treaty status, was not at issue in that case. I would also say that you also have to reconcile the Green decision with the decisions made in U.S. v. Washington 1 through 3, where Judge Bolt, for example, in his conclusion of Law No. 9 in 1974, said the court is required to grant deference to executive branch recognition of an Indian tribe. And all of the tribes in that proceeding that were recognized were automatically granted treaty status without having to prove anywhere in that case that they'd maintained a tribal structure. That decision was implicit. And the United States, this is in the Samish decision on page 1158, note 8, the United States, in its brief opposing certiorari to the U.S. Supreme Court of Washington 3, said if the tribe is recognized, that fact is probably controlling. Well, okay, but the denial of cert doesn't mean what you're trying to say it means. No, I'm not. Because that still doesn't, they could deny cert. Yes. And we could be inconsistent. We could have a problem in the Ninth Circuit. Yes. I mean, it doesn't, so I don't think that really is evidence of that. I'm not arguing it for that it's binding. I guess that those statements were made by the United States in that case. They were also made by the Lummi case in its Ninth Circuit brief in 1980 also. The implications of that last part of your argument seem to me to go squarely contrary to Green, because the intervention is denied to the Tulio and others because recognition is not going to have any effect on treaty rights. It's a completely separate issue. And if I heard you, I think you're saying, well, it really would be determinative. And, again, you need to look at the nature and quality of the recognition that the Samish tribe obtained in its recognition. Not every recognized tribe is entitled to treaty status. The Chehalis case, where they weren't a treaty signatory, they're recognized. They don't get treaty rights. If a tribe is recognized legislatively and they haven't proved or there's not facts in the legislative record showing that they had a continuous tribal existence, they wouldn't have treaty status either. But the question is, and these questions were raised before the Samish court at great length, the court in that case focused on the representations that had been made back in Washington I through III, that if they obtained recognition, that would merit reexamination of their treaty status. How would you now state a result that you want in this appeal that won't violate Green? Well, the Samish tribe has always stated that it is willing to litigate whatever issues the court decides in U.S. v. Washington when it is allowed to intervene. Its recognition is not and should not be subject to litigation in that proceeding, because recognition is a matter exclusively between the federal government and the tribe itself. So you're saying we might have to ignore some of the language in the last Washington case, and you would say what we won by recognition was simply a right to reopen. We didn't. The substantive issues remain to be determined. That's what the tribe has been seeking throughout this, is the right to relitigate it. At the same time, remember that the United States was the opposing party in the recognition proceeding. But I guess, you know, I have a question if that is really what they have been seeking, because there was a huge delay in bringing the motion to reopen, and the motion to reopen doesn't come right after they get recognition. It comes after a case says recognition equals treaty rights. So I'm going to have to call you on that, that that's not really what they're saying. It might be what they're saying here, but then if they get in there, then the argument will be, well, recognition equals treaty rights, and there's nothing to talk about. In the recognition case, I think what you're talking about is the ‑‑ Well, there's like five years. There is about four years, four and a half years, between the time that recognition was finally obtained, we say on November 1st of 1996, when the critical findings were reinstated. Those findings were reinstated because they were necessary for recognition under the federal acknowledgement regulations. The United States in its brief says it was acting as the trustee for the already recognized treaty tribes in Washington III. It was doing the same thing in the Samish recognition proceeding. We provided excerpts of the transcripts before Judge Zille on July 18th, 1996, where the United States said that Assistant Secretary Ada Deer changed the decision, not because of the evidence in that case, but because of her political responsibility to protect the already existing treaty tribes. So those were reinstated because they're necessary for recognition. In order to obtain land and trust, for example, the proceeding of Samishes in D.C. today and in light of the Carcieri decision, the Samish tribe has to prove that it's the historical Samish tribe in order to qualify for land and trust. And that was the exact argument that was raised before Judge Zille in 1996, and it's why he reinstated those findings. After that occurred, as I said, we provided over 13,000 pages of financial records to the opposition tribes. The tribe had no funds. They applied for funding from the United States under Part 89 of 25 CFR, which allows tribes to apply for discretionary attorney fee funding. They applied five years in a row. It took over two years for the United States to decide not to represent Samish in that case, which is a requirement to qualify for funding. Once funding was made available and the tribe also acquired some funding through gaming leases in late 2000, that's when they worked on and submitted the case. So they did so with all due diligence, but they didn't have the opportunity to do so beforehand. The Ninth Circuit, we believe, required the district court to grant the tribe's Rule 60b-6 motion, particularly on the issues of extraordinary circumstances and finality. Those two issues were expressly addressed by the Ninth Circuit in its decision, and Judge Martinez's decision on remand to revisit those two issues was clear error of law. We provided a number of cases from the Ninth Circuit that addressed when the circuit has decided a case expressly or by implication. And if you look at the ruling by Judge Martinez, once he decided that there was not extraordinary circumstances, despite what the Ninth Circuit had ruled in Samish, he then allowed that ruling to infuse and affect the subsequent rulings that he made. For example, on the issue that you raised about timeliness, if you look in Judge Martinez's opinion at page 15, he says, where extraordinary circumstances exist a longer time, four years or more, citing to a case, is reasonable to file the motion. He then goes on to say that where extraordinary circumstances do not exist, as applies in this case, now that he has found there are no extraordinary circumstances, a shorter time frame is applicable to the tribe's motion. So you have to look at that extraordinary circumstances ruling and how it affects all of the other rulings. As we cited in the Diaz versus Hawaii case, for example. Do you want to reserve time here? Yes, I do. Okay. Thank you. Thank you. May it please the Court, I'm Jim Gianetta, attorney for the Swinomish Indian Tribal Community, arguing on behalf of the treaty tribes. I share the argument with the United States and would like to take the first ten minutes of the argument and reserve five for the U.S., if that's agreeable to the Court. The treaty tribes are not here challenging the recognition of the Samish tribe in this case. We view the issue of Samish recognition as separate from treaty tribe status and we oppose only the reopening of the judgment in Washington II. The first appeal in this case focused on the conduct of the U.S. and the delayed attendance of Samish recognition. On remand, the inquiry in the district court shifted to the conduct of the Samish tribe, both in U.S. Washington and the Green litigation, which was the case that preceded it by which Samish attained recognition. The district court found that Samish conduct precluded the granting of its motion to reopen. Samish has sought to avoid the consequences of its own conduct by claiming that the Samish decision decided all issues related to the motion and requires it to be accorded treaty tribe status. But the mandate of this case does not require granting of the Samish motion. The court just, quote, reversed and remanded for proceedings consistent with this opinion. Well, there's a lot in the opinion about the fact that there were extraordinary circumstances and that the recognition wasn't sufficient to make it an extraordinary circumstance. There is a lot in the opinion on that point. But right after the discussion in Samish of the effect of recognition upon treaty tribe status, the very next sentence when the court in Samish took up finality says, Although we conclude that federal recognition of the Samish constitutes an extraordinary circumstance for Rule 60b-6, we must still decide whether the district court's finality concerns independently justify its denial of Samish's motion. The panel itself clearly did not view recognition in and of itself as a sufficient grounds for opening the motion. Then they answered their second question. They answered the second question in the negative. But the scope of the mandate involves only these two issues. The district court, the first time around, clearly indicated that the treaty tribes had argued additional issues which were not being addressed. And Rule 60b requires the court to weigh all of the factors involved and come up with a conclusion. There is nothing in the decision that says, Samish, you are now entitled to an entry of an order reopening your judgment. There is plenty in the Samish decision that indicates that the court should, in fact, must, and the Samish panel itself undertook the duty to address another issue. So I don't think that that's, I think that you would be reading the Samish decision more broadly than the panel itself did if you concluded that it opined that it must reopen the judgment. In fact, our position is that even if you found that recognition is equal to treaty rights, and even if you found that you can square that with Green 1 and Green 2 and the panel precedent rule and so forth, Judge Martinez still got it right. He took into account extraordinary circumstances in the recognition. He had some questions about how it related to the prior decisions and tried to harmonize them. But he took that into account, and then he weighed the other considerations and came up with the conclusion that the conduct of the Samish in regards to timeliness, equitable behavior, and finality and concern for the impact on other parties outweighed that factor. Judge Martinez got it exactly right. And whether you view the, whether you can get by Green 1 and 2 and arrive at a conclusion that the law of the Ninth Circuit is now the opposite that it was in Green 1 and 2, you're in the same position, in my view, of affirming the district court's judgment because ultimately Rule 60B is a weighing of a number of factors. But if recognition equals treaty rights, doesn't that put something in the balance of extraordinary circumstances? Well, yes, it would. But the factors still have to be weighed, and there's no court that I know of that's held that extraordinary circumstances is a sufficient condition for granting a motion. Under Ninth Circuit jurisprudence, it's a necessary condition. That's an extra element that has to be established for Rule 60B-6 itself. But there's still the weighing of the other factors. It's an extraordinary remedy. There's great deference to the district court in the weighing of those factors. What is the Ninth Circuit law on does recognition equal treaty rights? What is the Ninth Circuit law? Our opinion is that the Ninth Circuit law is Green 1 and Green 2, that treaty tribe status and recognition are separate issues. We think that issue was discussed at some length in Green 1 in particular, that Green 1 enunciated the difference between those two. Will you cut me a little slack and say it's not the easiest, they aren't the easiest cases to reconcile? Yes. I don't think you could reconcile them. I don't disagree with your statement Mullen Green said, but here's what the last appeal to us in Washington said. Indeed, our precedent leads us to the inevitable conclusion that federal recognition is a sufficient condition for the exercise of treaty rights. That's in the Samish decision. That does it. I mean, if you take that sentence as part of the mandate, it would go a very long way. Well, I take that sentence as part of the ruling that there are extraordinary circumstances. But a sufficient condition. I mean, they just say, you know, we've never held that it's, it says, the sentence right before that is, although we have previously held that federal recognition is not necessary, emphasis there, for the exercise of treaty fishing rights by a signatory tribe, we've never held that federal recognition is not a sufficient condition for the exercise of those rights. Indeed, our precedent leads us to the inevitable conclusion that it is. I don't see how you can square that with Green 1. I don't either. I think that you could do the job that Judge Martinez did and try to harmonize them. And in the next case, you'll hear that Judge Kunauer struggled with the same issue of trying to harmonize them. And basically, I think you come back to Green 1 is the law of the circuit. And that, in fact, there are substantial reasons for not according treaty tribe status. In this case, and generally, the effect that the Samish panel said. And these were identified in Green 1. To gain acknowledgment, and this is a quote from page 976, the Samish must establish the requisite social cohesion and community, continuity of political authority, and ancestry from an historic tribe. To assert treaty fishing rights, the Samish must demonstrate that they descended from a treaty signatory and have maintained an organized tribal structure. They're similar but have different purpose and effect. And then going on in page 977, quote, Samish need not assert treaty fishing rights to gain federal recognition. And in fact, in this case, Judge Zillian Green specifically excluded treaty rights from consideration by the administrative law judge. And the final determination made by the Assistant Secretary for Indian Affairs disclaimed any effect on treaty rights. Well, other than the fact that you want to win right here, why shouldn't we, sua sponte, call this case en banc to straighten this all out? So that these learned judges in the district courts don't have to try to figure out what's dicta, what's precedent, what, you know, what they have to follow. I mean, there's a lot of people that are confused here, or there's a lot of people that are saying that they're mutually exclusive. I'm saying it right here, so. The fact is that we have a Rule 60B motion that involves more than that. Well, you're saying unclean hands and you're saying essentially other things that if the court wanted to go an alternate route. But it's still, you know, the elephant in the room or the crocodile in the bathtub here is that everyone out there is having to wrestle with what appeared to be irreconcilable precedent. And the Ninth Circuit is, you know, speaking with forked tongue. And these poor district judges, you know, can't figure out what we've said. Well, I do recognize that if this panel concludes that these are inconsistent and that this issue needs to be resolved, then that is a remedy that's available. That is the correct procedure for doing that. I think that you don't have to do it in this case. But if that's where you're going, then I can't object to that. All right. I think the five minutes is left that you've agreed to share. So I will assert counsel's right to have her five minutes here. Thank you very much, Your Honor. May it please the Court, I'm Elizabeth Ann Peterson from the Department of Justice on behalf of the United States. As we explained in our brief, we agree with the treaty tribes that the decision below was within the discretion of the district judge who entered it and that it can be affirmed. We also believe, however, that to the extent that the law of the case here is that recognition equals treaty tribe status, it is irreconcilable with the Green cases, and that the rule in this court is that the court must therefore call for en banc unless it chooses to affirm. Would you take that position if the ruling were that recognition entitles reopening of Washington? That simply kicks the issue down the road, in my view, Your Honor, because if reopening, well, two points. In order for recognition to be an extraordinary circumstance, it has to have prevented Samish from timely preventing or correcting an erroneous judgment. You mean you have to have a showing of more than just a right to reopen. You have to have a showing of likelihood that some change ought to occur. There has to be some reason why that judgment should be reopened, and the law on it is that that judgment may be erroneous because of the extraordinary circumstance that prevented the party from litigating timely. So we don't believe that consistent with Green, recognition or acknowledgement can be regarded as an extraordinary circumstance as defined in the law. We took that position in a petition for rehearing, and that petition was denied. But our view, and it was expressed in that petition, is that the court cannot escape eventually reconciling the two decisions through an en banc proceeding because Green is the law of the circuit, and this decision, the decision that we're now calling Samish 1, is directly contrary to it in its import, if not in its specific holding. Do you know what other tribes might be lined up somewhere? There are actually a couple of district court decisions already that have wrestled with this. They are in the context of denials of decisions by the secretary that recognition has not been is not to be established, and therefore the treaty tribes have sought to intervene in those groups' challenges to their denial of acknowledgement. Of course, we have one up for argument shortly. Yes, Your Honor, I am aware of that. And in Samish 2, the notion that there is sort of a tension but it's dictum, is also directly contradicted by language in Green 2 that said that we denied Tulalip the opportunity to intervene because we disagreed with their argument that Samish success would undermine the finality of Washington 2. I don't see any way to reconcile at least the language, if not the holding, in Samish 2 with that language in Green 2. It looks like what's happening, you have a lot of these motions to intervene, and people obviously at the bottom line, they want to have something to say about what the law is, but also about getting the treaty rights. Now it appears what a lot of the district courts are doing is allowing people amicus status as opposed to allowing them intervention. That appears to be what the courts are doing. I think it's more essential, though, the question is a more critical one, than how various tribes are allowed to participate. There is a property right at issue, and there are due process concerns, and there is also the finality of judgments at issue here. We have a 30-year-old judgment that is now subject to potential serial attacks by new groups asserting that because of the rationale of Samish 2, they should be allowed to reopen that judgment. That judgment has given rise to a huge web of further decisions in the context of both the administration of the treaty rights in this case and others, so that the unraveling that would occur if this court were to allow this particular attack on a final judgment is epic. It is significant. There is no question that this case very significantly implicates the public interest in the finality of judgments, and it was for that reason that we took the position we did in Samish 1 and sought this court's hearing of that decision. Thank you. Thank you. I just want to address the issue that the court is focused on. I think if the court were to allow the Samish just to entitles it to reopening, the Samish tribe believes that its unique circumstances really are at issue in this case, despite what the U.S. attorney just said, for example. It's the United States' 27-year record of misconduct, ex parte contacts, and delays in this case. If those circumstances are applied in this case, it will not apply. Hopefully the U.S. hasn't had the same record of conduct with other tribes. Also, I want to just go back to you have the promise that was made by the United States throughout this U.S. v. Washington proceeding. I went back in the record, and as long ago as the hearing before Magistrate Cooper, the first proceeding in this whole case, George Dicehart, the U.S. attorney, said he was asked about the future recognition of these tribes. He said that was too speculative and hypothetical to address right then. He said it would be far sounder to await the happening of the event, and then, if necessary, review it in light of that. And possibly if it's found that the event has occurred as the type that would bring them within the category, extend them the recognition, the treaty status, accorded to those tribes that are in this case and that function as political entities. And it's that promise that the Samish tribe has used to then pursue federal recognition from 1972 through 1996, and they're trying to fulfill that promise now. Thank you. All right. Thank you both for your argument. It was very helpful to the Court. This matter will stand submitted.
judges: Canby, Thompson, Callahan